

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 06, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASON LESLIE JULIANO,<br><br>Defendant. | No. 2:18-CR-00021-RLP<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE** |

BEFORE THE COURT is Defendant Jason Leslie Juliano's Motion for Compassionate Relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 108. Mr. Juliano has filed an exhibit in support of his Motion containing his medical records and educational and disciplinary record, ECF No. 110. He has filed a Motion requesting that the supporting exhibit remain under seal, also pending before the Court. ECF No. 109. The Government opposes the Motion, and submitted a Motion to File an Overlength Response to Defendant's Motion. ECF No. 119.

ORDER DENYING MOTION FOR COMPASSIONATE RELEASE ~ 1

The matter was submitted to the Court without oral argument. Considering the breadth of issues raised and lengthy medical records submitted, the Court finds good cause to grant the Government's Motion. For the reasons set forth below, the Court denies Mr. Juliano's Motion for Compassionate Release, and grants his Motion to Seal.

BACKGROUND

In 2018, Mr. Juliano was charged with Felon in Possession of Firearm and Ammunition, in violation of 18 U.S.C. §§922(g)(1), 924(a)(2), and Possession with Intent to Distribute 50 Grams or More of Actual (Pure) Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). ECF No. 1.

Mr. Juliano entered a plea agreement to both counts of the indictment. ECF No. 63. A 21 U.S.C. §851 notice was filed and he was considered a career offender under the sentencing guidelines. ECF No. 79, ¶¶37, 178. United States District Judge Salvador Mendoza, Jr., sentenced him to 20 years of imprisonment, the mandatory minimum. ECF Nos. 79 ¶ 178; 85, 86.

On January 26, 2025, Mr. Juliano filed a petition with the BOP for compassionate release. ECF Nos. 102 at 8; 108 at 2. It has been over thirty (30) days, and he did not receive a response from the BOP. *Id*. He requests compassionate release due to his medical condition, inadequate health care, and his mother's medical conditions.

ORDER DENYING MOTION FOR COMPASSIONATE RELEASE ~ 2

*Mr. Juliano's Medical Condition*

Mr. Juliano had cataract surgery in his right eye in May 2022 at the Rocky Mountain Eye Center. ECF No. 110, Exh. 3 at 640, 757.

On June 6, 2022, Mr. Juliano was taken to the Emergency Department of St. Thomas More Hospital after allegedly being assaulted by two inmates. *Id*. at 629, 728; ECF No. 102, Exh. 1 at 8. He sustained severe head trauma, injury to his right eye, a laceration above his eyebrow, a closed fracture of the maxillary sinus, closed fracture of the orbital wall, and subconjunctival hemorrhage of the right eye. ECF No. 110, Exh. 3 at 629, 728.

On June 21, 2022, Mr. Juliano returned to the Rocky Mountain Eye Center for an evaluation of trauma in his right eye. *Id*. at 729. Dr. Rastrelli assessed that Mr. Juliano's vision was well, there was no inflammation from trauma, but noted an elevated Intraocular Pressure (IOP) in both eyes indicating glaucoma. *Id*. Mr. Juliano followed up with Health Services the following week, and denied having current pain or issues reported with his vision. *Id*. at 613.

Mr. Juliano returned to the Rocky Mountain Eye Center on August 11, 2022 for cataract surgery in his left eye. *Id*. at 608, 725.

On November 8, 2023, Mr. Juliano reported that his vision became black/brown and was limited to his extreme right periphery. *Id*. at 385. He was taken to an offsite emergency room the following day for a suspected

retinal detachment. *Id* at 383. He was recommended to follow up with Dr. Skolik within 3-5 days. *Id*. There is November 15 administrative note indicating that BOP was still awaiting a call back from Dr. Skolik's office regarding a re-referral. *Id*. at 381. Another note indicates that Dr. Skolik's office returned the call and referred Mr. Juliano to Pittsburg Medical Center with a recommendation for surgical repair within 48 hours. *Id*. at 380. Another note indicates that the BOP sent several emails to schedule his treatment to no avail. *Id*. at 378, 380.

The BOP secured treatment for Mr. Juliano's retinal detachment at the West Virginia University (WVU) Eye Institute on November 17. *Id*. at 367, 375-76. He had a follow-up appointment on November 21, during which he reported to medical staff that he felt his vision was improving in the right eye each day and he was compliant with medications. *Id*. at 367.

Mr. Juliano was re-admitted to the Eye Institute on December 15, 2023. *Id*. at 349-56. He was discharged on December 19 with instructions to return after one week. *Id*. at 353. Mr. Juliano was seen at Health Services for follow up appointments on December 20 and again on January 3, 2024. *Id*. at 298, 356.

On January 10, Mr. Juliano presented to Health Services with elevated IOP's and Molecular Edema. *Id*. at 292. Dr. Lane recommended a one-week follow up and referred him to a retina specialist to be treated with injections. *Id*.

Mr. Juliano received an Eylea injection at the Huntington Retina Center on

ORDER DENYING MOTION FOR COMPASSIONATE RELEASE ~ 4

March 11, 2024. *Id*. at 338-47. He was recommended to follow-up within one month of the appointment. *Id*. He followed up at Health Services on March 18. *Id*. at 276.

Mr. Juliano was thereafter transferred. During intake, he reported that he was last seen in March and required a follow up appointment. *Id*. at 269.

On June 6, 2024, Mr. Juliano had a specialist appointment at University of Michigan Health Ophthalmology Retina Clinic, Kellogg Eye Center. *Id*. at 261–64. He reported being unable to read, and being bothered by "floaters." *Id*. Dr. Wubben noted edema in Mr. Juliano's right eye. *Id*. at 264. Mr. Juliano was seen for a 12-week follow up at the Kellogg Eye Center with improved edema in his right eye in August of 2024. *Id*. at 218. He returned for a four-month follow up appointment in December, and reported that his vision was stable with no new floaters or flashes of light. *Id*. at 193. Dr. Wubben recommended that he return in six months but did not recommend surgery. *Id*. at 182, 197.

On January 14, 2025, Mr. Juliano was again seen at Kellog Eye Center. *Id*. at 20, 70-74, 183. Dr. Zhang recommended that he follow-up in 4-5 months. *Id*. at 73. He returned to the Kellogg Eye Center on June 10, 2025. *Id*. at 2–25.

*Mr. Juliano's Mother's Condition*

Mr. Juliano alleges that his mother has the following conditions: Chronic Obstructive Pulmonary Disease, Hyperlipidemia, Obstructive Sleep Apnea,

ORDER DENYING MOTION FOR COMPASSIONATE RELEASE ~ 5

Chronic Kidney Disease Stage 4, Pancreatitis, Nausea and Vomiting, Epigastric Pain, Essential Hypertension, Pancreatic Abnormality, Duodenal Stricture, Gastric Outlet Obstruction, Lumbar Back Pain, Lumbar Spondylosis, Facet Joint Syndrome, Degenerative Disc Disease of Lumbar Region, and Vertebrogenic Lower Back Pain. *See* ECF No. 108-1 at 21.

Mr. Juliano's mother, Ms. Kopriva, wrote a letter to the Court stating that her and her husband's health is failing, and that Mr. Juliano is crucially needed for caretaking and daily tasks. *See* ECF No. 108-1 at 27. Mr. Juliano's siblings and family friends have written letters to the Court requesting Mr. Juliano's release and make note of his mother's declining health. *See id*.

*Criminal History*

Mr. Juliano has incurred approximately sixteen state and federal convictions over several decades of his adult life. ECF No. 79, ¶¶3, 45–97. Mr. Juliano previously served a 72-month federal term of imprisonment for drug trafficking. *Id*. at ¶93. He has a total offense level of 34, criminal history category of VI, and guideline range of 262-327 months of imprisonment. *Id*. ¶¶40, 179, 200.

LEGAL STANDARD

Generally, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (quoting 18 U.S.C. §3582(c)). Nevertheless, a district court may modify an

ORDER DENYING MOTION FOR COMPASSIONATE RELEASE ~ 6

imposed sentence for limited reasons such as compassionate release under 18 U.S.C. § 3582(c)(1)(A). Compassionate release is a rare exception to that rule and is to be used only in extraordinary cases. *See* 18 U.S.C. § 3582(c)(1)(A).

In district courts, the inmate bears the burden to demonstrate eligibility for compassionate release. *See United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998).

Under the First Step Act, defendants are authorized to directly petition the court for compassionate release after exhausting their administrative remedies within the BOP. *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022). The Act grants courts discretion to consider compassionate release motions on an individualized basis, controlled by three substantive considerations:

> First, the district court must determine whether "extraordinary and compelling reasons warrant" a sentence reduction. Second, the court must evaluate whether a reduction would be consistent with applicable policy statements issued by the Sentencing Commission. Third, the court must consider and weigh the factors set forth in 18 U.S.C. 3553(a) to decide whether the requested sentence reduction is warranted under the particular circumstances of the case.

*Id*. (internal quotations and citations omitted).

In enacting Section 3582(c)(1)(A), Congress authorized the Sentencing Commission to determine what "extraordinary and compelling" reasons support a sentence reduction. *See* 28 U.S.C. § 994(t). The Commission's guideline identifies "extraordinary and compelling reasons" such as, "Medical Circumstances of the

ORDER DENYING MOTION FOR COMPASSIONATE RELEASE ~ 7

Defendant," and "Family Circumstances of the Defendant." U.S.S.G. § 1B1.13(b)(1)-(3).

If the Court finds that there are extraordinary and compelling reasons to grant compassionate release, the Court must then weigh the statutory sentencing factors, to the extent that they are applicable under 18 U.S.C. §3553(a), to determine whether to reduce a defendant's sentence. *See* 18 U.S.C. §3582(c)(1)(A). The sentencing factors include (1) the history and characteristics of the defendant; and (2) the need for the sentence imposed to (a) reflect the seriousness of the offense (b) promote respect for the law and provide just punishment for the offense and afford adequate deterrence to criminal conduct, (3) to protect the public from further crimes of the defendant, and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §3553(a).

## ANALYSIS

Mr. Juliano contends that his eye condition, inadequate medical treatment, and his mother's declining health present extraordinary and compelling circumstances. The Government contends that Mr. Juliano is seeking relief in the wrong place and should instead be proceed through a habeas petition or a direct civil claim in the district where the prison is located. The Government argues that even if this were the appropriate venue, Mr. Juliano's allegations do not meet the

definition of "extraordinary and compelling" in Section 1B1.13 and the §3553(a) Sentencing Factors weigh against release. Each argument is addressed in turn.

*Extraordinary and Compelling Circumstances*

    a. Sentencing Amendments

        As a preliminary matter, the partes dispute whether Section 1B1.13's provisions defining "extraordinary and compelling" circumstances are binding on the Court. The Court agrees with the Government that the 2023 Amendments bind the Court. *See, e.g., United States v. Keehn*, 2024 WL 4954327, at *2 n.21 (D. Alaska Dec. 3, 2024) ("[O]ur sister courts in the Southern District of California, District of Oregon, [Western] District of Washington, and District of Hawaii have held that the revised § 1B1.13 supersedes the decision in *Aruda*"); *United States v. Chavez*, 2024 WL 24065, at *3 (S.D. Cal. Jan. 2, 2024) ("[T]he amendments clarify that the policy statements apply to motions brought by both the BOP and defendants, fixing the issues identified by the Ninth Circuit [ . . . ] the policy statements are now binding for both types of motions"); *United States v. Brown*, 2023 WL 8650290, at *3 (W.D. Wash. Dec. 14, 2023) ("Because the current policy statement post-dates the First Step Act, *Aruda* no longer controls—the policy statement does"); *United States v. Arcila*, 716 F.Supp.3d 1052, 1055 (D. Or. Feb. 12, 2024) ("*Aruda* is no longer good law to the extent that it held that the policy statement is not binding on motions filed by defendants").

b. <u>Family Circumstances</u>

Mr. Juliano contends his mother's declining health presents extraordinary and compelling reasons to grant compassionate release. The Government responds Mr. Juliano's statements concerning his mother's health are both conclusory and factually insufficient for compassionate release purposes.[1]

The Court may grant compassionate release where the defendant would be the only available caregiver for an incapacitated (or similar situated) parent. U.S.S.G. § 1B1.13(a)(3)(C)-(D).

Here, Mr. Juliano has provided the Court some evidence of his mother's declining health. Specifically, he has provided several letters from his family and friends, all mentioning his mother's declining health. ECF No. 108-1 at 15-28. Mr. Juliano has not, however, provided any medical documentation of her condition. *Id*. at 28. While this evidence gives *some* indication of declining health, it is insufficient to allow the Court to assess the level of care she requires. More

---

[1] The Government also raises this argument with respect to Mr. Juliano's statements regarding the alleged prison assault. Mr. Juliano's motion concerns inadequate medical care for his eye conditions while in BOP custody. Whether his condition worsened due to an assault or other causes is irrelevant to the adequacy of his treatment.

ORDER DENYING MOTION FOR COMPASSIONATE RELEASE ~ 10

importantly, the letters state Mr. Juliano's sister, Ms. Richards is currently serving as their mother's primary caretaker, and Mr. Juliano's release plan indicates that, if released, he would reside with Ms. Richards and assist with caretaking responsibilities. Because the Mr. Juliano must show that he is the *only* caretaker, the Court denies compassionate release on these grounds.

## c. Inadequate Medical Care

The Government argues Mr. Juliano's claim that he is receiving inadequate medical care is not a proper ground for compassionate release. Mr. Juliano does not address this argument.

While other districts have found that a claim for inadequate medical care should be pursued through a habeas petition or a direct civil claim, the Ninth Circuit has not addressed the issue in a published opinion, and has declined to rule on whether Eighth Amendment claims may be brought under § 3582(c)(1)(A) in its unpublished opinions. *See United States v. Wheeler*, 837 F.App'x 542 (9th Cir. 2021); *United States v. Rivera*, 845 F.App'x 683 (9th Cir. 2021); *United States v. Alcaraz*, 2022 WL 12030043 (9th Cir. Sept. 19, 2022); *United States v. Arceneaux*, 830 F.App'x 859 (9th Cir. 2020). Accordingly, district courts have found "no barrier preventing the Court from considering his claims under the compassionate release framework" *United States v. McNair,* 2023 WL 4761644 at *5 (W.D. Wash. Jul. 25, 2023). This Court agrees.

ORDER DENYING MOTION FOR COMPASSIONATE RELEASE ~ 11

Mr. Juliano alleges that BOP ignored his surgeon's request for a one-week follow-up following his retinal detachment surgery in November of 2023, and again in December 2023. ECF Nos. 108 at 4, 5; 108-1 at 6. He also alleges delayed treatment in January of 2024.

There are "extraordinary and compelling" reasons for release where the defendant is suffering from a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," "the defendant is suffering from a … medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(a)(1).

The record shows the BOP regularly provided Mr. Juliano medical appointments, including follow up appointments, after he reported a detached retina on November 8, 2023. *See* ECF No. 110, Exh. 3 at 338-56, 367, 375-78, 380-83, 392, 298. There is no indication BOP disregarded the doctor's recommendations for a follow-up appointment in November or December of 2023. Rather, the record shows that BOP made concerted efforts to secure treatment. Although many of these follow up appointments were with Health Services, Mr. Juliano does not allege why follow-up appointments with Health Services were

insufficient. While there is some evidence that Mr. Juliano's medical care took longer than doctors recommended to treat his Molecular Edema, he does not provide any explanation as to why such follow-up appointments were insufficient or that it was medically necessary that he received the injection prior to March of 2024. Further, Mr. Juliano fails to allege any facts indicating that his eye condition diminished his ability to "self-care." *See* §1b1.13(b)(1)(B).

While it is apparent that Mr. Juliano's condition may require long term or specialized medical care, he fails to show adequate medical care is not being provided. Notably, the care Mr. Juliano is receiving may be superior to treatment he might receive should he be granted compassionate release. *See United States v. Salazar-Valenzuel*a, 2022 WL 16635330, at *2 (D. Az. Nov. 2, 2022) (citing numerous district court cases denying compassionate release when a defendant fails to show how he would receive better care outside BOP). Thus, the Court finds that Mr. Juliano has not shown extraordinary and compelling circumstances to justify compassionate release.

### § 3553(a) Factors

a. <u>Nature, Circumstances, and History</u>

The Government argues, and Mr. Juliano concedes, that the crime in which he was convicted is serious. Nevertheless, Mr. Juliano asserts that that no one was seriously injured or died from his actions, that his mandatory minimum sentence

was raised from 10 years to 20 years due to this prior conviction, and that the First

Step Act reduced the mandatory minimum upon the filing of an initial Section 851

notice from 20 to of 15 years imprisonment. ECF No. 108 at 15. The Government

argues that 18 U.S.C. § 3582(c)(1)(A) does not authorize sentence reductions

based on non-retroactive changes in sentencing

In *United States v. Chen*, the Ninth Circuit joined the First, Fourth, and

Tenth circuits in finding that "district courts may consider non-retroactive changes

in sentencing law, in combination with other factors particular to the individual

defendant, when analyzing extraordinary and compelling reasons for purposes of §

3582(c)(1)(A). 48 F.4th 1092, 1098-99 (9th Cir., 2022). While this argument may

be persuasive when there is a large disparity in the sentence (*see United States v.*

*Caballero-Perez*, 2023 WL 7026724 at *5 (D. Nev. Oct. 25, 2023)), or where a

defendant has served the duration of the new sentencing law (*see United States v.*

*McCreery*, 2022 WL 6152761 at *3-4 (D. Idaho Oct. 7, 2022), it is not persuasive

here, where Mr. Juliano has only served approximately seven years of his sentence.

b. <u>The Need for the Sentence Imposed</u>

Mr. Juliano's extensive criminal history demonstrates a pattern of

recidivism. Although his medical condition may diminish any threat to public

safety, it does not reflect the seriousness of the offense nor does it promote respect

for law. A seven-year sentence does not reflect the gravity of his crimes and

undermines the principles of justice and deterrence.

CONCLUSION

Because Mr. Juliano fails to show extraordinary and compelling circumstances, the Court denies his motion for compassionate release without prejudice. Mr. Juliano may renew his motion at a later date with updated medical information. Given this disposition, there is no significant public interest in the contents of Mr. Juliano's exhibits and the Court grants his motion to seal and finds good cause to grant the Government's motion.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.     Mr. Juliano's Motion for Compassionate Release, **ECF No. 108**, is **DENIED** without prejudice.

2.     Mr. Juliano's Motion to Seal, **ECF No. 109**, is **GRANTED**,

3.     The Government's Motion to File an Overlength Response, **ECF No. 119**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel, the U.S. Probation Office and the Bureau of Prisons.

**DATED** October 6, 2025

REBECCA L. PENNELL
DISTRICT COURT JUDGE

ORDER DENYING MOTION FOR COMPASSIONATE RELEASE ~ 15